IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOYCE E. RITCHEY, )
)
        Plaintiff, )
)
v. ) Civil Action No. 09-139J
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF )
SOCIAL SECURITY, )
)
        Defendant. )

<u>MEMORANDUM JUDGMENT ORDER</u>

AND NOW, this 21st day of September, 2010, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 9) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 7) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by

those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending applications[1] for disability insurance benefits and supplemental security income on April 27, 2006, alleging a disability onset date of January 1, 2006, due to back pain, cervical spine pain, Epstein-Barr virus, crooked bilateral knee caps and asthma. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on November 2, 2007, at which plaintiff, represented by counsel, appeared and testified. On February 26, 2008, the ALJ issued a decision finding that plaintiff is not disabled. On March 31, 2009, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 48 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). She has a tenth grade education which is classified as limited. 20 C.F.R. §§404.1564(b)(3) and 416.964(b)(3). Plaintiff has past relevant work experience as a factory sewing machine operator, housekeeper,

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and has acquired sufficient coverage to remain insured through December 31, 2010.

AO 72
(Rev. 8/82)

dietary aide, customer service representative, mail room worker and receptionist. It appears from the record that plaintiff has not engaged in any substantial gainful activity since July 21, 2006.[2]

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairment of back pain due to a motor vehicle accident, that impairment does not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P. The ALJ found that plaintiff's cervical spine pain, Epstein-Barr virus, crooked bilateral kneecaps and asthma are not severe because they do not result in any work-related functional limitations.

The ALJ also found that plaintiff retains the residual functional capacity to perform work at the light exertional level but with certain restrictions recognizing the limiting effects of her impairment. (R. 16-17). Relying on the testimony of a vocational expert, the ALJ concluded that plaintiff is capable of performing her past relevant work of receptionist in light of her

---

[2] Although plaintiff alleged an onset date of January 1, 2006, there was some confusion as to the date she last worked. Documents submitted by plaintiff post-hearing indicate that the last day she worked at her last job as a mail worker/receptionist was July 21, 2006, but she was paid for sick and vacation time after that day. (R. 67).

AO 72
(Rev. 8/82)

age, education, work experience and residual functional capacity.[3] Accordingly, the ALJ determined that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(1)(B) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[4] for determining whether a claimant is under a disability. 20 C.F.R. §§404.1520 and

---

[3] The vocational expert also identified numerous other jobs which an individual of plaintiff's age, education, work experience and residual functional capacity could perform, including ticket printer and garment hole puncher at the light exertional level and laundry patcher and plastic design applier at the sedentary exertional level. As a result, the ALJ alternatively found that plaintiff also is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy.

[4] The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920.

416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises numerous challenges to the ALJ's findings: (1) the ALJ erred at step 1 by finding that plaintiff engaged in substantial gainful activity until December 31, 2006; (2) the ALJ erred at step 2 by finding plaintiff's impairments of Epstein-Barr virus and cervical pain to be not severe; and, (3) the ALJ erred at step 4 in concluding that plaintiff could perform her past relevant work by ignoring the medical evidence and by improperly casting "unjustified aspersions" upon plaintiff as being a "non-conforming patient, a symptom magnifier and a drug seeker." Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that the ALJ's finding of not disabled is supported by substantial evidence.

Plaintiff's first argument, that the ALJ incorrectly found that plaintiff had engaged in substantial gainful activity since her alleged onset date of January 1, 2006, has no bearing on the ALJ's ultimate finding of not disabled. Initially, the record establishes that plaintiff did work after her alleged onset date, (R. 67), and plaintiff concedes in her brief that she is willing to amend her onset date to July 21, 2006.

Moreover, although it is unclear why the ALJ concluded that plaintiff performed substantial gainful activity "throughout 2006" after acknowledging that "the record shows she stopped working

July 21, 2006, but was paid through September 30, 2006," the ALJ nevertheless proceeded through the remaining steps of the sequential evaluation process, and any error as to the exact date plaintiff no longer engaged in substantial gainful activity is of no consequence when she was found to be not disabled later in the sequential evaluation process.

Plaintiff next challenges the ALJ's step 2 finding that Epstein-Barr virus and cervical pain are not severe impairments. The ALJ found that "the record contains no work-related functional limitations" as to these conditions and concluded that they "do not have more than a *de minimus* effect" on plaintiff's ability to perform basic work activities." The court has reviewed the record and is satisfied that the ALJ's step 2 finding is supported by substantial evidence.

At step two, the ALJ must determine whether a claimant's impairments are severe as defined by the Act. 20 C.F.R. §§404.1520 and 416.920. "[An] impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§404.1521(a) and 416.920(a). The step two inquiry is a *de minimus* screening device and, if the evidence presents more than a slight abnormality, the step two requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546.

Although "[r]easonable doubts on severity are to be resolved in favor of the claimant," Newell, 347 F.3d at 547, the ALJ

concluded in this case that cervical spine pain and Epstein-Barr virus are not severe impairments. The ALJ found that there are "no objective findings to support plaintiff's complaints of cervical spine pain" and further that the "presence of Epstein-Barr is not established." (R. 16) The record supports these conclusions.

In regard to cervical spine pain, the record establishes that a cervical spine MRI in June of 2006 showed evidence of "mild to severe spinal stenosis." (R. 148). However, an x-ray of plaintiff's cervical spine revealed no instability on flexion or extension and plaintiff declined any further medical or surgical treatments. (148; 155-59). Moreover, at an office visit in October of 2006, plaintiff stated that her neck was not a problem. (R.186). Finally, plaintiff failed to present any evidence from any treating physician identifying any specific work-related functional limitations arising from plaintiff's neck pain.

Likewise, substantial evidence supports the ALJ's finding that the presence of Epstein-Barr virus ("EBV") is not established. Initially, laboratory tests were negative for the presence of Epstein-Barr virus but instead were positive for EBV antibodies. (R. 132; 200). The narrative statement accompanying the test results indicates that "at least 90% of the adult population" will test positive for EBV antibodies, which develop 6-8 weeks after primary infection and remain present for life. (Id.) Accordingly, plaintiff's positive test results were interpreted to suggest a past infection. (Id.)

To the extent plaintiff alleges that fatigue is a symptom of Epstein-Barr virus, the record shows that plaintiff's treating physician, Dr. Hoffman, was somewhat skeptical as to whether EBV results in fatigue (R. 143), and on different occasions suggested plaintiff's fatigue "possibly" could be from EBV or was "probably, secondary to EBV." (R. 142; 206; 217). However, importantly, Dr. Hoffman also opined that plaintiff's medical condition would not be likely to produce her symptoms (R. 219) and that in her experience pain "had not been a limiting factor" in patients with EBV. (R. 231).

The plaintiff bears the burden at step 2 of establishing that an impairment is severe. See, McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3rd Cir. 2004). Although not exacting, plaintiff's burden here was to show that the presence of EBV antibodies resulted in more than a *de minimus* effect on her ability to perform basic work functions. However, plaintiff's treating physician was uncertain as to whether fatigue was a result of a past EBV infection, and, even if it was, no physician suggested any specific work-related limitations arising from a past EBV infection. It is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). Plaintiff failed to meet her burden of showing that a positive test for EBV antibodies resulted in any specific work-related limitations.

Moreover, it also is important to note that the ALJ did not deny plaintiff's claim for benefits at step 2. Instead, he considered the impact of all of plaintiff's medically determinable impairments, severe and not severe, on plaintiff's residual functional capacity and found plaintiff not disabled at step 4. Accordingly, the ALJ's step 2 finding not only is supported by substantial evidence but also had no effect on the ultimate determination of non-disability. See, McCrea, 370 F.3d at 360-61 (the Commissioner's determination to deny an applicant's request for benefits at step 2 "should be reviewed with close scrutiny" because step 2 "is to be rarely utilized as a basis for the denial of benefits".)

Plaintiff's remaining arguments all relate to the ALJ's finding of not disabled at step 4 of the sequential evaluation process. At step 4, the ALJ is required to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§404.1520(e) and 416.920(e). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §§404.1545(a) and 416.945(a); Fargnoli, 247 F.3d at 40.

Here, the ALJ found that plaintiff retains the residual functional capacity to perform light work with numerous restrictions. Plaintiff argues that in rendering his residual functional capacity finding the ALJ erred in evaluating the medical evidence. Specifically, she argues that the ALJ ignored

the opinions of plaintiff's treating physicians as well as the results of certain diagnostic tests. Upon review, the court finds no error in the ALJ's evaluation of the medical evidence.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight.[5] 20 C.F.R. §§404.1527(d)(2) & 416.927(d)(2); Fargnoli, 247 F.3d at 33. The ultimate determination of disability under the social security regulations, however, is for the Commissioner and the opinion of any medical source on that determination never is entitled to special significance. 20 C.F.R. §§404.1527(e) and 416.927(e); SSR 96-5p.

The ALJ adhered to the foregoing standards in evaluating the medical evidence and the court finds no error in the ALJ's conclusions. Although Dr. Burk and Dr. Hoffman both suggested that plaintiff would be capable of only part-time sedentary work (R. 226-29; 218-19), the ALJ expressly addressed both of those opinions and explained why he declined to give them weight.

First, the ALJ noted that Dr. Burk's assessment that plaintiff was capable of performing sedentary work limited to 20

---

[5] Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(d) & 416.927(d).

hours per week was based solely on plaintiff's complaints of pain which were not supported by the objective evidence. (R. 19). Furthermore, Dr. Burk himself acknowledged in the same assessment that he only saw plaintiff on six occasions and that it was "debatable" whether he adequately could assess plaintiff's degree of impairment. (R. 229).

Moreover, although Dr. Hoffman also opined that plaintiff could perform part-time sedentary work limited to 20-25 hours per week, she also stated in her assessment that plaintiff's alleged pain was not present to any appropriate degree, that her medical condition would not be likely to produce her alleged symptoms, and that physical activity would not increase plaintiff's level of pain. (R. 219).

Accordingly, any suggestion that plaintiff is limited to part-time sedentary work simply is not supported by the medical evidence and is inconsistent with Dr. Burk's and Dr. Hoffman's own objective findings. The ALJ did a thorough job in his decision in setting forth the relevant medical evidence and explaining why he gave no probative weight to the opinions at issue. The court is convinced that the ALJ's evaluation of the medical evidence is supported by substantial evidence in the record.

The court has considered plaintiff's remaining arguments and finds them to be without merit. In essence, those arguments all suggest that the ALJ improperly evaluated plaintiff's credibility and cast "unjustified aspersions" upon her as being a "non-conforming patient, a symptom magnifier and a drug seeker."

Specifically, plaintiff takes issue with three statements set forth in the ALJ's 9-page opinion: (1) that plaintiff's requests for medication stronger than the powerful pain medication Vicodin "suggest drug-seeking behavior which may have caused her to exaggerate symptoms in order to obtain potent pain medication;" (2) that Dr. Burke suggested plaintiff seek treatment elsewhere, and that testing recommended by Dr. Burke was never completed, thus implying that plaintiff was non-compliant; and, (3) that Dr. Hoffman indicated that plaintiff "would like to come here at least once every six months." (R. 18). None of these statements, however, significantly impact the ALJ's finding of not disabled.

As to Dr. Burke's recommendation that plaintiff seek treatment elsewhere, that statement is true. Dr. Burke did recommend treatment "in a university setting." (R. 185). As to Dr. Hoffman's statement, frequency of treatment in fact may appropriately be considered in evaluating a plaintiff's credibility under the regulations. §§404.1529(c)(3) and 416.929(c)(3) and SSR 96-7p ("[claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.").

Finally, as to the ALJ's statement that suggests that plaintiff was engaging in "drug-seeking behavior," while such speculation may better have been left out of the decision, that isolated comment had no significant bearing on the ALJ's overall credibility determination, which otherwise is supported by substantial evidence in the record.

- 12 -

The court is satisfied that the ALJ properly evaluated plaintiff's subjective complaints of pain and limitations in accordance with the regulations in arriving at his residual functional capacity finding.[6] In assessing credibility, the ALJ did consider plaintiff's subjective complaints, but *also* considered those complaints in light of the medical evidence, plaintiff's rather extensive activities of daily living, her treatment history and all of the other evidence of record. In doing so, the ALJ found plaintiff's subjective complaints to be "exaggerated and generally inconsistent with the objective findings." (R. 19). The ALJ thoroughly explained his credibility finding and that finding is supported by substantial evidence.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

                              /s/ Gustave Diamond
                              Gustave Diamond
                              United States District Judge

---

[6] Allegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. §§404.1529(c) and 416.929(c), and an ALJ may reject a claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); see also SSR 96-7p.

cc: Larry D. Lashinsky, Esq.
    Rea, Rea & Lashinsky
    415 Wayne Street
    P.O. Box 487
    Hollidaysburg, PA 16648

    Stephanie L. Haines
    Assistant U.S. Attorney
    319 Washington Street
    Room 224, Penn Traffic Building
    Johnstown, PA 15901